Submitted on record and briefs July 25, affirmed September 19, reconsideration denied October 26, 1977, petition for review pending

WILLIAMS, *Petitioner,*

*v.*

CIVIL RIGHTS DIVISION, *Respondent.*

(No. 433, CA 7340)

568 P2d 707

Curtis G. Oler, San Francisco, California, and Duncan Callister, Lake Oswego, filed the brief for petitioner.

James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and Kevin L. Mannix, Assistant Attorney General, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

This is an appeal from an order of the Employment Relations Board (ERB) upholding petitioner's dismissal as a state employe. ERB found that petitioner's absence without leave from his job for a month constituted misconduct; that petitioner's refusal to furnish documentation of his claimed medical disability constituted insubordination; and that petitioner's excessive absenteeism established unfitness to render effective service. Petitioner's ambiguous and conclusory arguments seem to question whether the procedures culminating in ERB's order were constitutionally sufficient, and whether the record supports ERB's findings of fact and conclusions of law. We affirm.

On Thursday, January 29, 1976, petitioner requested his supervisor, the Administrator of the Civil Rights Division, to grant him a medical leave of absence without pay for the month of February 1976. Petitioner's request was "documented" by a statement from a doctor which read in full:

"I have advised [petitioner] to take a medical leave of absence for February, 1976 until the problems that he is having medically can be resolved."

The administrator requested that petitioner obtain a more specific statement from his physician.

The next day, Friday, January 30, petitioner had delivered to the administrator a second doctor's statement which read in full:

"I have advised [petitioner] to take a medical leave of absence because of increasing pressure and severe thumb pains that prevent him from effectively performing his duties. I have told [petitioner] he can probably return to work March 1, 1976."

The administrator felt this statement was also insufficient, but did not have an opportunity to communicate with petitioner that day on petitioner's still-pending request for leave.

[ 985 ]

Also on Friday, January 30, petitioner protested to the Deputy Commissioner of the Bureau of Labor that he had received no response to his request for leave. The deputy commissioner told petitioner to stay home on Tuesday, February 3—Monday, February 2 was a holiday—so that he could investigate the matter. After consulting with the administrator, the deputy commissioner also had questions about the nature and extent of petitioner's medical problems. Those two officials tried throughout the rest of the month of February to contact petitioner by registered mail and by phone. Petitioner did not answer mail or return phone calls and, in fact, had no contact with his supervisors during the month of February. Petitioner was in California during this period, having arrived there on or before February 3. While there, petitioner took the California Bar examination that he had applied for the prior November or December. Petitioner never informed his supervisors that he planned to take the examination.

Upon returning to work on March 1, petitioner was informed that disciplinary action was being considered because of his absence during the month of February and again asked to furnish a more detailed doctor's statement. Petitioner refused to do so. Petitioner's supervisors then initiated these dismissal proceedings. In addition to the above incidents, the notice of dismissal relied upon the fact that between February 1975 and February 1976 petitioner had been absent from his job for a total of 13 weeks.

■ Petitioner has some complaint about the procedures followed. Before his dismissal, petitioner was informed of the charges against him and the sanctions being considered. He also had the opportunity to refute the charges before a three-member panel of fellow state employes, who had authority to make a recommendation to the appointing authority. These pretermination procedures fully complied with the requirements of *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976). After the appointing authority dismissed him, petitioner was afforded a full-fledged

evidentiary hearing before ERB. *See Fairview Hospital v. Stanton,* 28 Or App 643, 560 P2d 667 (1977). Petitioner received all required due-process protections.

■ Petitioner has some quarrel with ERB's findings and conclusions. ERB found that it was "within the discretion" of the appointing authority to allow or deny petitioner's request for leave; that the denial of petitioner's request "was reasonable and not arbitrary"; that petitioner "was absent without leave from February 4 through February 29, 1976"; and that

> "* * * [t]his is misconduct. This conduct by itself is sufficient grounds for dismissal."

ERB also found that the charge of insubordination "was sustained" because petitioner

> "* * * refused to provide adequate relevant medical information regarding his condition which the employer could use in making a determination as to whether sick leave without pay should be granted. * * * [T]he two notes from the physician which * * * [petitioner furnished] do not provide sufficient information."

ERB also found

> "[Petitioner] was absent 525 hours or more than three months from February, 1975 through February 1976. * * * [Petitioner] was employed to work full time, but his absences had the effect of making him an intermittent or substantially less than a full time employe. There is evidence in the record that the [petitioner's] absences were disrupting the ability of the Civil Rights Division's ability to reduce its sizeable backlog of civil rights complaints. * * * [T]he record of absences is such to conclude that he is unfit to render effective service."

We hold ERB's findings are supported by substantial evidence, ORS 183.482(8)(d), and ERB's conclusions are supported by substantial reason, *McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), Sup Ct *review denied* (1977).

■ A final issue arises from the fact that the employer advanced five reasons for petitioner's dismissal, but ERB only sustained three of those reasons. In a similar

situation, we have held that it is necessary for ERB to remand to the appointing authority for reconsideration of the sanction imposed in light of ERB's findings. *Civil Rights Div. v. Williams,* 28 Or App 651, 560 P2d 673, Sup Ct *review allowed* (1977). However, we conclude that a remand on the record in this case would be superfluous. The employer explained its view of the severity of the charges against petitioner in its notice of dismissal. The notice states that petitioner's refusal to provide requested medical information "is insubordination and misconduct and constitutes cause for your dismissal." Moreover, the notice states that petitioner's absenteeism "makes you a part time employee in a full time position and constitutes other unfitness to render effective service."And, as previously noted, ERB's order states that petitioner's month-long unauthorized absence "by itself is sufficient grounds for dismissal." On this record we are satisfied beyond any doubt that a remand would be pointless.

Affirmed.